UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL HURLEY,

    Plaintiff,

      v.

LIFE INSURANCE CO. OF NORTH
AMERICA, *et al.*,

    Defendants.

Civil Action No. 04-252 (CKK)

**MEMORANDUM OPINION**
(July 9, 2006)

Presently before the Court is Plaintiff's Memorandum of Points and Authorities in Support

of Discovery.  Plaintiff Paul Hurley brings suit against Defendants Life Insurance Company of

North America and its parent company CIGNA Corporation ("LINA/CIGNA"), alleging that

Defendants wrongfully denied benefits in violation of the Employee Retirement Income Security Act

of 1974, 29 U.S.C. §§ 1001, *et. seq.* ("ERISA").  Plaintiff requests discovery regarding the scope of

Defendants' review, Defendants' interpretation of the benefits plan, and the relationship between

CIGNA and LINA.  After considering Plaintiff's Memorandum, Defendants' Opposition, and

Plaintiff's Reply, and the relevant statutes and case law, the Court – in exercising its discretion –

shall grant-in-part and deny-in-part Plaintiff's discovery requests in the form of interrogatories and

document requests.

**I.  BACKGROUND**

It is not disputed that on February 22, 2001, Kevin Hurley, an accountant at KPMG, LLP,

died in an automobile accident on his way home from a KPMG recruiting event in Washington,

D.C.  Second Am. Compl. ¶ 16.  The recruiting event included a reception and a visit to a local

nightclub. *Id*. ¶ 10-11.  Laboratory work after the accident showed large amounts of alcohol in

Kevin Hurley's blood and bodily fluids. *Id*. ¶ 10-12, 17.  At the time of the accident, Kevin Hurley

was assigned by KPMG to work at the offices of PBS Station WETA, an Arlington-based client.  *Id*.

¶ 8.  Because Kevin Hurley did not have an office at KPMG's Washington, D.C. premises, he drove

from his Arlington, Virginia, office to attend the event in Washington, D.C., and parked his car

downtown. *Id*. ¶ 10.  According to Plaintiff's Second Amended Complaint, the exact location in

which Kevin Hurley parked his car is unclear, but may have been an office building garage.  *Id*. ¶

23.

        KPMG sponsors a business travel accident policy administered by LINA.  Answer ¶ 18-19.

According to the policy, the estate, heirs, or beneficiary receives $250,000 if Kevin Hurley died on

his way home from business travel.  Second Am. Compl. ¶ 32.  The policy excludes commuting

between one's home and regular place of employment.  Defs.' Opp'n at 4.  After the accident, Kevin

Hurley's father, Plaintiff Paul Hurley, filed a claim for business travel accident benefits on the

grounds that Kevin Hurley died while traveling home from business for KPMG.  Second Am.

Compl. ¶ 20.  LINA denied Paul Hurley coverage for his son's death, arguing that Kevin Hurley

returned to his "place of work" when he retrieved his car.  Defs.' Opp'n at 4.

        Plaintiff initially filed this suit in the Superior Court of the District of Columbia against

LINA, CIGNA and KPMG, alleging various state law claims arising from Kevin Hurley's death and

LINA/CIGNA's subsequent denial of recovery for that death.  *Hurley v. Life Ins. Co. of N. Am.*,

No. 04-252(CKK), slip op. at 2 (D.D.C. July 7, 2005) (memorandum opinion and order granting-

in-part and denying-in-part motions to dismiss).  Defendants LINA/CIGNA removed the case to this

Court on February 17, 2004, pursuant to 28 U.S.C. § 1441, on the grounds that this Court had

original jurisdiction under 28 U.S.C. § 1331 and ERISA.  *Id*. at 2-3.  Simultaneously,

LINA/CIGNA filed a Motion to Dismiss the original Complaint, alleging that ERISA preempted Plaintiff's state law claims. *Id.* at 3. On March 5, 2004, Plaintiff filed an Opposition to Defendant's Motion to Dismiss, moved for leave to amend the Complaint, and attached an Amended Complaint with ERISA claims. *Id.* at 3. On March 11, 2004, Plaintiff moved to remand the case to state court. *Id.* at 3. Defendant KPMG answered the original Complaint, filed a Motion to Dismiss Counts IV and V of the Complaint, and opposed Plaintiff's Motions for Leave to Amend the Complaint and for remand. *Id.* at 3.

After holding a Status Conference on August 5, 2004, the Honorable Judge Thomas Penfield Jackson granted Plaintiff's motion for leave to amend the Complaint and denied Plaintiff's Motion to Remand. *Id.* at 3. Judge Jackson also denied without prejudice Defendants' motions to dismiss the original Complaint because those motions to dismiss had become moot after he granted leave to amend the Complaint.[1] *Id.* at 3. Plaintiff's Amended Complaint contained six counts: (1) Count I alleged wrongful denial of benefits under ERISA against LINA/CIGNA, and sought $250,000 plus prejudgment interest, fees, and costs; (2) Count II alleged breach of contract against KPMG, and sought $250,000 plus prejudgment interest, fees, and costs; (3) Count III alleged ERISA breach of contract against KPMG, and sought $250,000 plus prejudgment interest, fees, and costs; (4) Count IV alleged ERISA breach of fiduciary duty against KPMG, and sought $250,000; (5) Count V alleged civil conspiracy against both LINA/CIGNA and KPMG, and sought $500,000 in compensatory damages and $1,000,000 in punitive damages; and (6) Count VI alleged ERISA promissory estoppel against KPMG and LINA/CIGNA, and sought $500,000 in compensatory damages. *Id.* at 3-4.

---

[1] After Judge Jackson retired in August 2004, this case was reassigned to this Court on October 7, 2004. *Id.* at 3.

3

On August 19, 2004, Defendants LINA/CIGNA filed a Motion to Dismiss Counts I, V, and VI of the Amended Complaint, pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6). *Id.* at 4. On the same day, KPMG filed a motion to dismiss Counts II, III, IV, V, and VI of the Amended Complaint pursuant to FRCP 12(b)(6). *Id.* at 4. In addition, Plaintiff filed a Motion for Summary Judgment on Count I of the Amended Complaint against LINA/CIGNA on September 10, 2004. *Id.* at 4. The Court denied without prejudice Defendant LINA/CIGNA's Motion to Dismiss Count I of the Amended Complaint, but granted LINA/CIGNA's and KPMG's Motions to Dismiss the remaining counts, on the grounds that ERISA preempts each of the counts because they relate to an employee welfare benefit plan within the meaning of ERISA Section 514(a), 29 U.S.C. § 1144(a) (2005), and because Plaintiff has an adequate remedy under Section 502(a)(1)(B) in Count I. *Id.* at 11. The Court denied Plaintiff's Motion for Summary Judgment on Count I because Plaintiff did not meet his initial burden of demonstrating an absence of genuine issues of material fact. *Id.* at 29.

Following the Court's ruling, Plaintiff filed both a Second Amended Complaint and a Memorandum of Points and Authorities in Support of Discovery, which is currently before the Court.[2] Plaintiff's discovery requests include the following: (1) information regarding the scope of review and investigation of the claim; (2) all documents and information that Defendants generated as part of the claims process; (3) policy information to determine whether the policy confers discretion and whether the insurer was affected by a conflict of interest; (4) information regarding the policies and procedures for deciding claims; (5) information regarding the relationship between CIGNA and LINA; and (6) information regarding decisions made in the evaluation of other

---

[2] Plaintiff filed a Memorandum of Points and Authorities in Support of Discovery and a Reply in Support Thereof. The Court shall cite to these documents as "Pl.'s Mem." and "Pl.'s Reply," respectively.

insurance claims that dealt with the issue of whether a place of work included a parking garage.

Pl.'s Mem. at 2, 3, 5, 10, 12, 13.

Defendants filed an Opposition in which they argue that Plaintiff's discovery requests should

be denied because Plaintiff has not demonstrated exceptional circumstances or a need for discovery.

Defs.' Opp'n. at 8.  Defendants also allege that the administrative record provided to Plaintiff

"contains all information collected, reviewed, and/or relied upon by LINA when denying Plaintiff's

benefit claim," and that the record documents telephone calls, e-mails, and facsimiles relating to

Plaintiff's claim.  *Id.*  Furthermore, Defendants argue that discovery is not necessary for the standard

of review issue because LINA stipulates that *de novo* review is appropriate.  *Id.* at 9-11.  In

Plaintiff's Reply, Plaintiff drops its request for discovery regarding the appropriate standard of

review based on Defendants' stipulation that *de novo* review is appropriate.  Pl.'s Reply at 1.

However, Plaintiff maintains and clarifies its discovery requests relating to the completeness of the

administrative record, the policies and procedures regarding claim determination, the adequacy of

Defendants' review, Defendants' interpretation of the benefits plan, and the relationship between

CIGNA and LINA.  *Id.* at 2-11.

## II. DISCUSSION

A.      *Standard of Review*

A participant or beneficiary of an employee benefit plan may file suit under ERISA Section

502(a)(1)(B) "to recover benefits due to him under the terms of the plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C.

§ 1132(a)(1)(B).  In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held that federal

courts must apply a *de novo* standard of review to a denial of benefits challenged under section

1132(a)(1)(b), "unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan," in which case the abuse of discretion standard applies. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 103 L.Ed.2d 80 (1989). The standard of review may also be affected by a conflict of interest, which occurs when the insurance administrator is responsible for both deciding whether to grant claims and paying the benefits.[3] *Id.* Courts within this jurisdiction have allowed discovery in order to determine whether a conflict of interest exists because "information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review." *See, e.g.*, *Pulliam v. Cont'l Cas. Co.*, No. Civ. A 02-370 (RWR/AK), 2003 WL 1085939, at *3 (D.D.C. Feb. 27, 2003).

In the case at hand, Plaintiff initially argued that LINA/CIGNA have a conflict of interest, and therefore the Court should allow discovery on the conflict of interest issue to determine which standard of review should apply. Pl.'s Mem. at 5. However, Defendants stipulated in their Opposition that *de novo* review is appropriate, and Plaintiff subsequently discarded its request for discovery regarding a potential conflict of interest. Defs.' Opp'n at 11; Pl.'s Reply at 1. Accordingly, the issue of discovery for the purposes of determining the standard of review is moot,

---

[3] The circuits have adopted different methods for applying the standard of review in conflict of interest cases. *Hamilton v. AIG Life Ins. Co.*, 182 F. Supp. 2d 39, 44 n.3 (D.C.C. 2002). Some circuits adopt a sliding scale approach, "where the level of deference shown to the insurance company decreases in proportion to the evidence of a conflict." *Id.* (citing *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 392 (3d Cir. 2000)). Other circuits follow a burden-shifting approach, which is to presume the administrator's decision as arbitrary and capricious unless the administrator demonstrates that its decision was correct under *de novo* review, or that the conflict of interest did not influence the administrator's decision. *Id.* (citing *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1566-67 (11th Cir. 1990)). Finally, some circuits have refused to apply any form of heightened review without evidence of an actual conflict of interest, but will apply the *de novo* standard once the plaintiff shows that a conflict influenced the administrator's decision. *Id.* (citing *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1255-56 (2d Cir. 1996)). The D.C. Circuit has not yet addressed this issue.

and the Court adopts a *de novo* review in light of the potential conflict of interest.  *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1255-56 (2d Cir. 1996); *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1322-23 (9th Cir. 1995).

      B.      *Scope of De Novo Review*

      The majority of federal courts of appeals have held that "in reviewing a plan administrator's decision for abuse of discretion, the federal courts may not consider evidence beyond the 'administrative record' – the materials compiled by the administrator in the course of making his decision."  *Hall v. UNUM Life Ins. Co. of America*, 300 F.3d 1197, 1201 (10th Cir. 2002) (citing *Sandoval v. Aetna Life & Cas. Ins. Co.*, 967 F.2d 377, 380-81 (10th Cir. 1992)).  However, the circuits are split over whether a court, in reviewing a denial of benefits case, may admit evidence beyond that which was before the plan administrator.[4]  *Hall*, 300 F.3d at 1201.  The Sixth Circuit prohibits the introduction of evidence outside the administrative record in *de novo* cases, on the grounds that by considering evidence that was not before the plan administrator, district courts would become "substitute plan administrators," which was not the intention of Congress in enacting ERISA.  *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966-67 (6th Cir. 1990).  However, the Eleventh Circuit takes an opposite view, allowing the court to consider additional evidence outside the administrative record.  *Moon v. Am. Home Assurance Co.*, 888 F.2d 86, 89 (11th. Cir. 1989).  The *Moon* court's reasoning for permitting extra evidence was to protect employees and beneficiaries, as "preserving pre-ERISA levels of protections for employees" was one of the Supreme Court's goals in *Firestone*.  *Hall*, 300 F.3d at 1201.

---

      [4] ERISA does not indicate either a standard of review or the scope of that review. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1021 (4th Cir. 1993) (en banc).

Other circuits have taken a more moderate approach.  For example, the Fourth, Eighth, and Tenth Circuits allow district courts to consider evidence beyond the administrative record, so long as the party requesting discovery is able to demonstrate exceptional circumstances or a need for extra evidence.  *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026 (4th Cir. 1993) (en banc) (holding that courts may review evidence outside the administrative record where exceptional circumstances warrant additional evidence); *Hall*, 300 F.3d at 1202 (same); *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993) (holding that district courts should not allow parties to introduce evidence that was not before the fiduciary unless there is good cause to do so).  The *Quesinberry* court lists the following as "exceptional circumstances" that warrant discovery beyond the administrative record: (1) claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; (2) the availability of very limited administrative review procedures with little or no evidentiary record; (3) the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; (4)  instances where the payor and the administrator are the same entity and the court is concerned about impartiality; (5) claims which would have been insurance contract claims prior to ERISA; (6) and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.  *Quesinberry*, 987 F.2d at 1027.

Finally, some circuits allow discovery of documents outside the administrative record only in specific circumstances.  *Hall*, 300 F.3d at 1201.  The Second, Fifth, and Ninth Circuits allow the admission of extra evidence if it pertains to plan interpretation by the administrator, but not with regard to administrator's finding of historical facts.  *Masella v. Blue Cross & Blue Shield of Conn.*, 936 F.2d 98, 104 (2d Cir. 1991); *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 638, 642 (5th Cir. 1992); *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44

8

(9th Cir. 1995).  According to the *Masella* court, admitting evidence that pertained to the interpretation of the plan would not result in the court becoming "substitute plan administrators" because "the only time *de novo* review is appropriate under *Firestone* is when the plan administrator does not have the discretion to interpret the plan terms." *Quesinberry*, 987 F.2d at 1024 (citing *Masella*, 936 F.2d at 104).  The D.C. Circuit has not yet decided this issue of whether district courts may review evidence beyond the administrative record.  *See Fitts v. Fed. Nat'l Mortgage Ass'n*, 204 F.R.D. 1, 3 (D.D.C. 2001) (noting that the D.C. Circuit has not yet spoken to the issue of whether district courts are limited to the administrative record in their review of an ERISA case).[5]

Based on the Court's reading of Plaintiff's Memorandum and Reply, Plaintiff requests the following documents and information: (1) emails, notes, internal correspondence, and any other documents that Defendants generated or obtained as part of their review of Plaintiff's claim, regardless of whether they relied upon those documents or included them in the administrative record; (2) policies and procedures that governed the review of Plaintiff's claim; (3) documents relating to LINA's interpretation of "place of work" with respect to parking garages in other cases; (4) discovery relating to the adequacy of Defendants' investigation; (5) documents and information regarding CIGNA's corporate relationship with its fellow Defendant, LINA.  Pl.'s Mem., Ex. A (9/9/05 Pl.'s Req. for Produc. and Interrogs. (hereinafter, "Pl.'s Req.")) at Interrogs. 1-21; Doc. Req. 1-10.  The Court will now address each of these categories of requests.

---

[5] At least one district court judge in the District of Columbia has faced the same issue and found that discovery beyond the administrative record was permissible, wherein the court granted discovery of information regarding the identity and role of all individuals involved in the denial of the plaintiff's insurance claim. *Pulliam*, 2003 WL 1085939, at *5; *Infra*, II.B.4.

1.    Emails, notes, internal correspondence, and any other documents that LINA/
      CIGNA generated or obtained during their review of Plaintiff's claim

ERISA requires that the administrator of a benefits plan provide claimants, upon request,

with all documents, records, and other information relevant to the claimant's claim for benefits.  29

C.F.R. § 2560.503-1(h)(2)(iii).  A document is considered "relevant to the claim" if it was

submitted, considered, or generated in the course of making the benefit determination, without

regard to whether such document, record, or other information was relied upon in making the benefit

determination." *Id.* § 2560.503-1(m)(8).  Plaintiff alleges that Defendant has excluded from its

administrative record "drafts, e-mails, and other internal correspondence" that were generated

during Defendants' review of Plaintiff's claim, and that Defendant should be compelled to produce

those documents.  Pl.'s Mem. at 3-4; Pl.'s Mem., Ex. A. (Pl.'s Req.) at Interrogs. 13; Doc. Req. 2, 3,

4, 5, 7, 9.  Based on the ERISA language requiring production of any documents that were

"submitted, considered, or generated in the course of making the benefit determination," Defendants

were required to produce the e-mails, notes, and internal correspondence that Plaintiff is requesting.

Similarly, courts have held that even under the arbitrary and capricious standard of review, which

gives considerable deference to the administrator, discovery is permitted to determine whether the

administrative record is complete.  *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 103, 105-07

(W.D.N.Y. 2000) (noting that "judicial review without a complete and accurate record is in no

one's interest . . . and . . . does not comport with the meaningful judicial review Congress

undoubtedly had in mind")

Defendants argue that they have handed over every document that they "collected, reviewed,

and/or relied upon . . . when denying Plaintiff's benefit claim."  Defs.' Opp'n at 8.  Defendants also

assert that the administrative record "documents telephone calls, e-mails, and facsimiles with various

10

individuals and entities relating to Plaintiff's claim . . . ." Defs.' Opp'n at 8.  It is possible, based on

Defendants' statements, that Defendants have in fact turned over every e-mail, note, or other internal

correspondence produced or collected during their review of Plaintiff's claim.  If that is the case,

Defendants are ordered to submit a sworn affidavit via an employee with personal knowledge that

they have included in the administrative record every document "submitted, considered, or generated

in the course of making the benefit determination, without regard to whether such document, record,

or other information was relied upon in making the benefit determination."  29 C.F.R. § 2560.503-

1(m)(8).  However, based on the language that Defendant uses to describe the contents of the

administrative record, it is not clear that Defendants meant for "collected, reviewed, and/or relied

upon" to be synonymous with "generated."  As a result, Defendants leave open the possibility that

they have not provided Plaintiffs with every document created in relation to Plaintiff's claim.  If

there are any remaining e-mails, notes, internal memorandum, or other documents that were

generated during Defendants' review or decision-making process, the Court orders Defendants to

produce those documents within 30 days of receiving this order.  *See Doe v. Travelers*, 167 F.3d

53, 58 (1st Cir. 1999) (ordering fiduciary to produce medical notes, exchange of correspondence,

and recollections of oral conversations because that information should have been included in the

administrative record, as it reflected "just what information [claim fiduciary] had and why it acted

as it did"); *Cannon v. UNUM Life Ins. Co. of Am.*, 219 F.R.D. 211, 215 (D.Me. 2004) (ordering

insurance administrator to produce any documents that it left out of the administrative record on the

grounds that "removal of 'contrary evidence' from the record does not comport with full and fair

claims review").

2.      Policies and procedures that guided Defendants' review of Plaintiff's benefits
        claim

Additionally, Plaintiff requests that LINA/CIGNA produce all policies and procedures that

governed the review of Plaintiff's claim.  Pl.'s Mem., Ex. A (Pl.'s Request) at Doc. Req. 6, 8, 10.

The Court notes that the administrative record, as described in Defendants' Opposition, does contain

"The Policy."  Defs.' Opp'n at 5.  If there are any other policy-related or procedural documents that

informed Defendants' investigation or review of the claim, the Court orders Defendants to produce

such documents within 30 days, as they are relevant to Plaintiff's claim that Defendant wrongfully

denied benefits to Plaintiff.  *Cannon*, 219 F.R.D. at 214 (ordering administrator to provide claimant

with "all internal memorandum, policies or guidelines that inform[ed] administrator in interpreting

or applying the mental illness limitation," as these documents are relevant to the question of whether

administrator wrongfully denied Plaintiff's claim and therefore belong in the administrative record).

If Defendants have provided Plaintiff with all policies and procedures that informed their decision,

Defendants must submit a sworn affidavit through a competent individual with personal knowledge

to that effect.   The Court does not require Defendants to answer Plaintiff's Interrogatory 5, which

asks Defendants to "[d]escribe LINA's policies and procedures for addressing and deciding claims

like that made by Paul Hurley" because the Court finds that interrogatory to be duplicative of

Plaintiff's Document Requests 6, 8, and 10.

3.      Documents relating to LINA's interpretation of place of work with respect to
        parking garages in other cases

Plaintiff requests documents and information from similar cases that show how Defendants

have interpreted the relevant terms of the benefits plan, particularly "place of work" and whether it

includes parking garages.  Pl.'s Mem. at 13.  Plaintiff's reason for this additional request is to

determine whether Defendants have decided claims consistently.  Pl.'s Mem. at 13.  Multiple circuits

have allowed discovery beyond the administrative record when it pertains to interpretation of the terms of the plan rather than specific historical facts. *Masella*, 936 F.2d at 104. Furthermore, one of the "exceptional circumstances" that justifies discovery beyond the administrative record, according to the *Quesinberry* standard, is "the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts." *Quesinberry*, 987 F.2d at 1027. However, courts have not always allowed Plaintiffs discovery of evaluations of other insurance claims, even if it relates to plan interpretation. In fact, the District Court of the District of Columbia has denied this type of discovery request in the past. For example, in *Fitts v. Fed. Nat'l Mortgage Ass'n*, the plaintiff was denied long term disability benefits based on her insurer's classification of her bipolar disorder as a mental rather than physical illness. *Fitts*, 204 F.R.D. at 2. To determine whether UNUM, the insurer, wrongly or inconsistently categorized her disorder, the plaintiff requested documents regarding "how they have treated other benefit claims under any policy which excluded a mental illness or disorder from coverage." *Id*. The *Fitts* court denied this discovery request, finding it overly-broad and excessive, such that it went "beyond even the Fed. R. Civ. P. 26(c) standard of relevance to a claim or defense."[6] *Id*. at 4.

The case at hand, however, is distinguishable from *Fitts*. In *Fitts*, the plaintiff alleged that UNUM wrongfully excluded bipolar disorder from the long-term benefits plan, but asked for information on other insurance claims in which UNUM excluded *any* mental illness or disorder from coverage based on the physical/non-physical distinction. *Id*. at 2. In the present case, Plaintiff questions Defendants' conclusion that "place of work" includes parking garages, but rather than

_____

[6] "That, five years ago, [UNUM] allowed a claim of someone with a diseases [*sic*] or disorder listed in DSM-IV casts no light whatsoever on the scientific validity of [UNUM]'s conclusion that plaintiff's bipolar disorder fits within the exclusion of the Fannie Mae Policy." *Id*. at 4.

requesting documents for every case that denied insurance based on their "place of work" interpretation, Plaintiff is asking for documents involving Defendants' interpretation of "place of work" only in the context of parking garages.  Therefore, Plaintiff's document request in the present action is more relevant and narrowly-tailored to his wrongful denial claim than the plaintiff's request in *Fitts*.  Case law demonstrates that courts are more willing to allow discovery of plan interpretation for other insurance claims when the request focuses on similar claims that were denied for the same reasons.  Indeed, the *Fitts* court noted that "[t]he only possible relevant information would be . . . instances where [UNUM] took the position that a bipolar disorder did not fall within the mental illness exclusion."  *Id.* at 4.  Similarly, in *Cannon* the court allowed the plaintiff discovery of the insurer's treatment of previous claims, "but only . . . pertaining, specifically, to whether *drug-induced* dementia is an 'other condition not listed' to which [UNUM] will not apply the mental illness limitation . . . ." as opposed to all of the dementia-producing disabilities that have been subject to the mental illness limitation.  *Cannon,* 219 F.R.D. at 216 (emphasis added). Furthermore, administrators are obligated under ERISA to apply the plan provisions consistently with respect to similarly situated claimants, thus discovery regarding whether the administrator has applied its policies consistently is relevant to Plaintiff's claim that Defendants treated similar claims inconsistently.  29 C.F.R. § 2560.503-1 (b)(5); *Cannon*, 219 F.R.D. at 216; *see Wildbur v. ARCO Chem. Co.*, 974 F.2d at 638 (noting that "[d]etermining whether the administrator had given a uniform construction to a plan may require a court to evaluate evidence of benefit determinations other than the one under scrutiny").  For these reasons, this Court orders Defendants to produce all documents, within 30 days, from other insurance claims, that deal with the interpretation of the specific question of whether a place of work includes a parking garage.  The Court does not require Defendants to disclose information regarding the circumstances or particulars of other claims, but

14

only documents that reflect how LINA interpreted "place of work" with respect to parking garages.

>4.   <u>Discovery beyond the administrative record that relates to the accuracy and adequacy of LINA's investigation</u>

Plaintiff alleges that Defendants fell short in their investigation and review of Hurley's claim by failing to gather important evidence from witnesses and by making certain factual assumptions regarding Kevin Hurley's parking location, based on a thin record of evidence.  Pl.'s Mem. at 8. Accordingly, Plaintiff requests discovery to determine the scope of Defendants' investigation, Defendants' basis for certain factual determinations, and whether Defendants followed the proper claim procedures.  Pl.'s Mem., Ex. A (Pl.'s Req.) at Interrogs. 1, 3, 4, 6, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21.

As the Court concluded earlier, Plaintiff is entitled to all documents that Defendants generated in their review of Plaintiff's claim, pursuant to ERISA.  *Supra*, II.B.1.  If any of the information that Plaintiff requests in the interrogatories listed above can be found in the documents that Defendants generated during their review of Plaintiff's claim, then Plaintiff should receive that information.  However, some of the interrogatories listed above go beyond the administrative record – particularly the interrogatories requesting information about certain LINA employees and their role in deciding Plaintiff's claim, the steps they took to review the claim, and the factual support behind Defendants' determination that Kevin Hurley retrieved his car from a parking garage. Accordingly, the Court must decide whether to permit discovery beyond the administrative record.

Plaintiff relies on a previous case in this jurisdiction, *Pulliam v. Cont'l Cas. Co.*, to argue that discovery regarding the scope and adequacy of Defendants' review should be permitted.  In *Pulliam*, Magistrate Judge Alan Kay allowed discovery of information regarding the identity and role of all individuals involved in the denial of the plaintiff's claims.  *See* 2003 WL 1085939, at *5.

In addition, Judge Kay permitted discovery of facts supporting the administrator's contention that the plaintiff was not covered under the benefits plan. *Id.* However, *Pulliam* is distinguishable from the case at hand. While Judge Kay ordered discovery because it was relevant to a potential conflict of interest, in the present action, discovery relating to the conflict of interest issue is unnecessary because Defendants stipulated that *de novo* review is appropriate to this case. *Id.* at 4-5; Pl.'s Reply at 1.

Furthermore, Plaintiff fails to demonstrate how information about the people who decided Plaintiff's claim is relevant or necessary to an adequate *de novo* review. *Quesinberry*, 987 F.2d at 1025. The Court is not convinced by Plaintiff's argument that some of *Quesinberry*'s "exceptional circumstances" apply to this case. For example, Plaintiff provides no evidentiary support for his allegation that this case qualifies as "limited administrative review procedures with little or no evidentiary record." Pl.'s Reply at 6. Furthermore, the fact that this case would have been an insurance claim prior to ERISA's enactment is not enough by itself to warrant discovery beyond the administrative record. *Hall*, 300 F.3d at 1206 (holding that even where a case would have been an insurance claim prior to ERISA, district courts must still determine whether to allow the introduction of additional evidence). But even if one of *Quesinberry*'s exceptional circumstances applied to this case, the Court has discretion to deny evidence outside of the administrative record. *Quesinberry*, 987 F.2d at 1027. The Court finds no justification for Plaintiff's interrogatories regarding LINA employees, the steps that they took to review the claim, and their factual support for determining Kevin Hurley's parking location. Plaintiff's assertion that Defendants could have gathered more information or testimony regarding Plaintiff's claim is unconvincing because Plaintiff has not pointed to specific information or documents that would demonstrate that Defendants overlooked certain evidence. Therefore, the Court denies Plaintiff's interrogatories that request

16

information about certain LINA employees and their role in deciding Plaintiff's claim, the steps they took to review the claim, the people LINA/CIGNA contacted during their investigation of Plaintiff's claim, and information about Kevin Hurley's parking location.  See Interrogs. 1, 3, 4, 6, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21.

> 5.   <u>Documents and information regarding CIGNA's corporate relationship with LINA</u>

Plaintiff requests discovery to determine the relationship between CIGNA and LINA, and CIGNA's role in evaluating the claim.  Pl.'s Mem., Ex. A (Pl.'s Req) at Interrogs. 7, 8; Doc. Req. 1, 10.  In particular, Plaintiff requests "documents that evidence LINA's corporate affiliation with CIGNA, including without limitation shareholders' documents, corporate resolutions, and any affiliate agreement between the two companies."  Pl.'s Mem., Ex. A (Pl.'s Req) at Doc. Req. 1.  The Court understands that the corporate relationship between CIGNA and LINA should be clarified.  Information regarding the relationship between Defendants is relevant to the question of whether CIGNA is liable for the denial of Plaintiff's benefits and whether Plaintiff should dismiss CIGNA from the lawsuit.  *Saldi v. Paul Revere Life Ins. Co.*, 224 F.R.D. 169, 189-91 (E.D.Pa. 2004) (permitting discovery regarding the corporate relationship between the defendants, on the grounds that such discovery is relevant to whether the parties acted in concert in terminating Plaintiff's benefits).  However, it is unclear to the Court why Plaintiff was unwilling to enter into a stipulation with CIGNA and LINA as to their corporate relationship.  Such a stipulation would be binding on the parties and would be a simpler solution than discovery.  Therefore, the Court will allow limited discovery regarding the relationship between LINA and CIGNA if a stipulation cannot be reached.

### III. CONCLUSION

For the reasons set forth above, in exercising its discretion, the Court shall grant-in-part and deny-in-part Plaintiff's discovery requests in the form of interrogatories and document requests. However, even though  the Court is allowing Plaintiff limited discovery, such a grant of discovery does not necessarily entail that the Court shall consider, in its *de novo* review, the documents or information that Plaintiff obtains through the extended discovery process.

LINA/CIGNA shall, by Wednesday, August 8, 2006, provide the following documents and interrogatories:

(1) all e-mails, notes, internal memorandum, or other documents that were generated during Defendants' review or, alternatively, a sworn affidavit from an employee with personal knowledge that Defendants have included in the administrative record every document submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

(2) all documents and information relating to the policies and procedures that guided Defendants' review of Plaintiff's claim, and that were not included in the administrative record or, alternatively, a sworn affidavit from a competent individual with knowledge that Defendants have provided Plaintiff with all policies and procedures that informed their decision;

(3) all documents from other insurance claims that Defendants decided, that deal with the interpretation of the specific question of whether a place of work included a parking garage;

18

(4) all documents and information that evidence LINA's corporate affiliation with CIGNA,

including but not limited to shareholders' documents, corporate resolutions, and any affiliate

agreement between the two companies, unless a stipulation is reached.

An appropriate Order accompanies this Memorandum Opinion.


Date:   July 9, 2006


_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge